UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEMIS ELIZONDO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SEAWORLD PARKS & ENTERTAINMENT, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 20CV829-GPC(BGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 28.]** |

　　　　Before the Court is Defendant's motion for summary judgment.  (Dkt. No. 28.) Plaintiff filed an opposition, (Dkt. No. 33), and Defendant replied, (Dkt. No. 35). Based on the reasoning below, the Court DENIES Defendant's motion for summary judgment.[1]

---

[1] In addition to the summary judgment motion, Defendant filed a motion to strike any future expert opinions proffered by Plaintiff because she failed to disclose or designate any experts during discovery. (Dkt. No. 29.)  On April 27, 2021, without briefing by the parties, the Magistrate Judge denied the motion to strike as premature since Plaintiff had not yet proffered any expert testimony as evidence. (Dkt. No. 31.)  Then, in her opposition to the summary judgment motion, Plaintiff submitted the expert opinion of Eris J. Barillas and failed to address the challenges raised by Defendant.  In its reply, Defendant filed an objection to the expert report of Ms. Barillas.  (Dkt. No. 35.)  As it stands, the briefing on the issue of raised in Defendant's motion to exclude is incomplete.  However, because the Court is able to rule on the summary judgment without relying on any expert report, the Court, at this

**Background**

Plaintiff Artemis Elizondo ("Plaintiff") filed a state court complaint against SeaWorld Parks & Entertainment, Inc. ("Defendant") alleging a claim of negligence and premises liability which was removed to this Court on May 1, 2020. (Dkt. No. 1-2 at 8[2], Compl.)

On June 26, 2018, Plaintiff was visiting Sea World San Diego with her family when she fell as she was walking in the Explorer's Reef Café carrying a tray with food and drinks. (Dkt. No. 33-1, Pl's Response to D's SUMF[3], No. 1.) After purchasing food and drinks, Plaintiff walked toward the condiment bar carrying the tray while her mother walked by her side. (*Id.*, No. 2.) On the way to the condiment bar, Plaintiff saw a cautionary "wet floor" sign to her immediate right about 3-4 feet away. (*Id.*, No. 3.) After her mother put condiments on her tray, Plaintiff rotated 180 degrees, took two steps and while taking her second step she slipped and fell forward striking her left knee. (*Id.*, No. 4.) On the date of the accident and while at Sea World, Plaintiff wrote a statement in Spanish indicating that she slipped on water: "I went out with the food tray. You take some ketchups. And when I turned, I slipped. There was water, and it was slippery. And I landed on my left knee. And then I landed sitting." (Dkt. No. 28-7, D's NOL, Ex. 1, Plaintiff Depo 55:12-15; 5615-17.) At her deposition, she testified that there was no water because it was slippery. (*Id.* at 56:6-7.) Instead, Plaintiff testified she slipped on a shiny, slippery substance she thought was mayonnaise. (Dkt. No. 33-1, Pl's Response to D's SUMF No. 6.) Plaintiff does not know how long the shiny substance had been on the floor prior to her fall. (*Id.*, No. 9.)

Plaintiff's mother, Maria Salazar, did not see the shiny spot before the fall but afterwards saw something shiny on the floor but she had no idea what it was. (*Id.*, Nos.

---

time, declines to address the issue. The parties may raise the issue of the admissibility of Plaintiff's expert report at the motions in limine hearing.
[2] Page numbers are based on the CM/ECF pagination.
[3] Defendant's Statement of Undisputed Material Facts.

13, 14.) Plaintiff's sister, Brisa Herrera, arrived at the accident scene about two minutes after the fall and saw a shiny spot about one to two feet from where her sister was sitting on the ground. (*Id.*, Nos. 11, 15.) Herrera did not examine or touch the spot, cannot say what it was, and did not know how long the spot was there. (*Id.*, No. 16.)

During the day, the Culinary Team, which manages the restaurant and condiment bar, will sweep the area in and around the condiment bar periodically, usually between shows and any time a spill is detected. (*Id.*, No. 18.) The sweeping is done by the frontline ambassadors, such as cashiers or food servers, who are within the Culinary Department. (*Id.*, No. 19.) Every day a different employee is designated to inspect the condiment bar area for restocking and to clean any spills or food debris. (*Id.*, No. 20.) The cleaning and sweeping of the restaurant floor would have been performed at least 9 to 12 times a day at the time of the accident and based on the time of the accident, the area would have been cleaned within 10-20 minutes of the accident. (*Id.*, Nos. 21, 22.)

If during the day someone detects a spill, a wet floor sign is placed and then it is swept or mopped up as soon as possible. To facilitate the cleanup of spills there is a mop and bucket and basic cleaning supplies in a close range within 25 to 35 feet of the condiments area. (*Id.*, No. 23.) Any employee who sees a spill should either clean it right away if feasible or if the spill cannot be mopped up at that moment the practice is to mark the area of the spill with a CAUTION WET FLOOR sign to warn customers of the spill. (*Id.*, Nos. 24, 27.) If a spill occurs and the area is mopped, the CAUTION WET FLOOR sign is left out over the area that has been mopped to warn patrons that the area has been recently mopped and that the floor and surrounding area may still be wet or damp. (*Id.*, Nos. 25, 28.) After the Park closes, the area of the incident is swept, scrubbed, and mopped, and if the area is not clean the next day before opening it is cleaned again. (*Id.*, No. 26.) Employees are trained to act as expeditiously as possible and they go through company training and individual department training, where the procedures for cleaning spills are explained. (*Id.*, No. 29.)

/ / /

## Discussion

### A. Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana*

*v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

### B. Premises Liability/Negligence

Defendant argues that it did not breach its duty of care because it did not have actual or constructive knowledge of the dangerous condition. (Dkt. No. 28-1 at 12-18.) Plaintiff opposes contending that Defendant had constructive knowledge of the dangerous condition. (Dkt. No. 33 at 7-9.) Specifically, she claims that because Defendant failed to maintain any logs of inspection or cleaning on the premises where she fell, she is entitled to an inference that Defendant had constructive notice of the dangerous condition that caused her to slip and fall. (*Id.* at 9.) Defendant replies that it discharged its duty by inspecting the premises in a reasonable manner on the day of the incident and no reasonable inference can be made that SeaWorld had constructive notice. (Dkt. No. 35 at 4-6.)

"Premises liability is a form of negligence"; therefore, a plaintiff must demonstrate the elements of negligence: duty, breach, causation and injury. *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619 (1989); *Pineda v. Ennabe*, 61 Cal. App. 4th 1403, 1407 (1998) ("the liability of landowners for injuries to people on their property has been governed by general negligence principles.").

"A store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved." *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001). Therefore, a store owner "must use the care required of a reasonably prudent [person] acting under the same circumstances." *Id.*

"In order to establish the element of causation in a premises liability claim, the plaintiff must show that the store owner either directly caused the dangerous condition or had actual or constructive knowledge of the dangerous condition." *Eidem v. Target Corp.*, No. EDCV 10–01000 VAP(DTBx), 2011 WL 3756144, at *6 (C.D. Cal. Aug. 24,

2011) (citing *Ortega*, 26 Cal. 4th at 1205-06). "Where the dangerous condition is brought about by . . . third persons . . .which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises." *Hatfield v. Levy Bros.*, 18 Cal. 2d 798, 806 (1941).

Constructive knowledge may be shown with evidence suggesting that "the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence." *Ortega*, 26 Cal. 4th at 1206. "Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations. Each accident must be viewed in light of its own unique circumstances. The owner must inspect the premises or take other proper action to ascertain their condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable for failing to correct it." *Id.* at 1207 (internal citation omitted). Because a store owner is not an insurer of the safety of its patrons, "the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." *Id.* at 1206; *Carrillo v. Target Corp.*, No. 17-cv-05693-WHA, 2019 WL 201514, at *1 (N.D. Cal. Jan. 15, 2019) (quoting *Ortega*, 26 Cal. 4th at 1206).

When the plaintiff has no evidence about the source of the dangerous condition or how long the dangerous condition existed "evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it. [Citation.]" *Ortega*, 26 Cal. 4th at 1203. In *Ortega*, the plaintiff slipped on a puddle of milk in a Kmart and suffered significant injuries to his knee. *Id.* at 1204. The plaintiff had no direct evidence of how long the milk had been on the floor. *Id.* There was evidence that KMart employees were trained to look for and clean up spills but

1 KMart kept no written inspection records. *Id.* The Kmart manager testified that on the
2 day of the incident, he would not have known if the aisle where the spill occurred had
3 been inspected at any time. *Id.* The manager stated that he could not imagine that
4 something would be on the floor for more than 15 or 30 minutes but admitted the milk
5 could have been there for as long as two hours. *Id.* The California Supreme Court
6 affirmed a jury verdict in favor of the plaintiff holding that KMart's failure to conduct
7 inspections within a reasonable time before the incident raised a reasonable inference that
8 the spill existed long enough to be discovered and remedied. *Id.* at 1210.

Similarly, in this case, Plaintiff has no direct evidence of the source of the slippery substance and how long the slippery substance on which she allegedly slipped on was on the floor. Instead, she relies on Defendant's failure to maintain any inspection logs to demonstrate that there is no evidence that anyone inspected the premises prior to the accident.

Defendant argues that it provided evidence that the premises where Plaintiff fell was inspected on the day of the incident and rely on the declarations of Miguel Castro ("Castro"), the Food Service Manager, (Dkt. No. 28-3, Castro Decl. ¶ 1), as well as Steve Norby, Defendant's Environment, Health and Safety Leader. (Dkt. No. 28-4, Norby Decl. ¶¶ 1, 2.) Yet, both merely recite the safety and cleaning procedures and practices that are taught to its employees and should be carried out[4] rather than providing evidence that these procedures were actually conducted on the date of the incident.

As Plaintiff points out, Defendant admits it does not keep an inspection or cleaning log and none exist on the date of the incident. (Dkt. No. 28-3, Castro Decl. ¶ 7; Dkt. No. 33-3, Pl's NOL, Ex. 1, Castro Depo. at 12:3-11; 13:22-25; 28:16-21.) At his deposition, Castro testified that the areas of the accident should have been cleaned and whether a culinary team member walked around the area of the accident to look for spills on the

---

[4] Castro uses phrases such as "cleaning and sweeping of the restaurant would have been performed", "would have been cleaned", and "our practice is to." (Dkt. No. 28-3 Castro Decl. ¶¶ 5, 6, 8. 10.)

date of the incident is something he would imagine would have been done.  (*Id.* at 16:9-12; 19:13-17.)  While failing to maintain a cleaning log, itself, does not give rise to an inference of constructive knowledge, without any other evidence that the area was inspected or cleaned, it raises an issue of fact whether an actual inspection had been made shortly before the incident to permit a reasonable inference that the dangerous condition existed long enough for it to be discovered by Defendant.  Accordingly, the Court DENIES Defendant's motion for summary judgment on whether Defendant had constructive knowledge of the dangerous condition.

Defendant also moves for summary judgment on whether it had actual knowledge of the dangerous condition because the flooring met all applicable safety standards and it put Plaintiff on notice by placing a yellow caution sign where liquid was present.  (Dkt. No. 28-1 at 12-13.)  Plaintiff indirectly opposes this issue indicating that the yellow caution sign did not cover all areas of the wet floor.  (Dkt. No. 33 at 5.)

Mr. Norby acknowledged that the yellow caution sign that was placed on the date of the incident did not cover all areas where the floor was wet and was an indication that there was a spill or a mop clean up in that area.  (Dkt. No. 33-3, Pl's NOL, Ex. 2, Norby Depo. at 21:6-24.)  Defendant's placement of a yellow caution wet sign near the area where Plaintiff fell raises a genuine issue of material fact whether Defendant had actual knowledge of the dangerous condition.  Accordingly, the Court DENIES Defendant's motion for summary judgment on whether Defendant had actual knowledge of the dangerous condition.

**C.    Duty to Warn of Open and Obvious Dangerous Condition**

Defendant also argues that it had no duty to warn Plaintiff of the dangerous condition because it was open and obvious due to the placement of the yellow caution sign.  (Dkt. No. 28-1 at 18-19.)  Plaintiff does not respond to this argument.

As a starting point, Plaintiff's theory of liability does not appear to be based on Defendant's failure to warn but rather on a failure to exercise reasonable care in keeping the premises reasonably safe.  Nonetheless, the Court considers Defendant's argument.

A store owner is "not liable for injury to the invitee which results from a condition that is obvious or should have been observed by the invitee in the exercise of reasonable care." *Holcombe v. Burns*, 183 Cal. App. 2d 811, 815 (1960). "[A]lthough the obviousness of a danger may obviate the duty to *warn* of its existence, if it is *foreseeable* that the danger may cause injury despite the fact that it is obvious (for example, when necessity requires persons to encounter it), there may be a duty to *remedy* the danger, and the breach of that duty may in turn form the basis for liability, if the breach of duty was a proximate cause of any injury." *Osborn v. Mission Ready Mix*, 224 Cal. App. 3d 104, 122 (1990) (emphasis in original). "[T]he trier of the fact must determine any conflict as to whether or not the danger was obvious to the invitee." *Beauchamp v. Los Gatos Golf Course*, 273 Cal. App. 2d 20, 36 (1969).

In this case, even if the yellow caution sign had put Plaintiff on notice of the dangerous condition surrounding that sign, the sign itself was three to four feet away from where she fell. Therefore, there is a disputed issue of fact whether the dangerous condition where Plaintiff actually slipped and fell was open and obvious in light of the yellow caution sign. Even if Plaintiff alleges that Defendant failed to warn of the dangerous condition, the Court DENIES summary judgment on that issue.

## Conclusion

Based on the above, the Court DENIES Defendant's motion for summary judgment. The hearing is set on June 25, 2021 shall be **vacated**.

IT IS SO ORDERED.

Dated: June 17, 2021

Hon. Gonzalo P. Curiel
United States District Judge